UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 10-11-ART-1,5,7

UNITED STATES OF AMERICA,                                       PLAINTIFF,

V.                **MAGISTRATE JUDGE'S REPORT
                       & RECOMMENDATION**

ANGELENE BOYD
PROCTER WAYNE PENNINGTON, SR.,
SHEENA SPEARS,                                                       DEFENDANTS.

## I. INTRODUCTION

This matter is before the undersigned on the motion of Defendants Boyd, Pennington Sr., and Spears, to suppress evidence. [R. 62, 103]. For the following reasons, it is recommended that the motion [Id.] be denied.

## II. FACTUAL HISTORY

On January 21, 2010, Kentucky State Police Trooper Bradley Cure was contacted by FBI Task Force Officer Randy Hunter, concerning a vehicle believed to be en route to Kentucky from Florida, containing a substantial amount of controlled medication. [R. 74 at 8]. The next day, at approximately 3:30 a.m., Trooper Cure met with Officer Hunter and other law enforcement officers to coordinate a traffic stop of the vehicle. [Id. at 8-9, 66-68]. Trooper Cure was advised during the meeting that the subject vehicle was a red GMC pickup truck, and would be occupied by Defendant Pennington, Sr. ("Pennington"), and other individuals. [Id. at 9]. Following the meeting, Trooper Cure drove to a location near the Kentucky and Virginia border, and parked his vehicle on a truck ramp to conduct surveillance of U.S. Highway No. 23. [Id. at 11]. Officer Hunter and Detective

Bill Riley drove south on U.S. 23 into Virginia, in hopes of locating the truck before it entered Kentucky. [Id.].

At approximately 5:45 a.m., Officer Hunter contacted Trooper Cure via radio to advise that he had spotted a red GMC truck traveling northbound on U.S. 23. [Id. at 12]. Shortly thereafter, Trooper Cure observed the truck pass him on U.S. 23, followed by the vehicle occupied by Officer Hunter and Detective Riley. [Id.]. Trooper Cure pulled onto U.S. 23 and followed the vehicles for approximately ten (10) to twelve (12) miles. [Id.]. Upon observing the GMC truck traveling sixty-seven (67) miles per hour in a fifty-five (55) mile per hour zone, Trooper Cure initiated a traffic stop. [Id. at 12-13].

Trooper Cure approached the drivers' side of the truck where he made contact with Pennington. [Id. at 14]. Inside the vehicle, Trooper Cure observed two female passengers in the front seat, and a male and female passenger in the rear seat. [Id.]. Trooper Cure asked Pennington to provide his drivers' license, registration receipt, and proof of insurance. [Id.]. Due to increasing traffic on the highway, Trooper Cure directed Pennington to exit the truck and bring the documents to him. [Id.]. Pennington complied, and the two met at the guardrail, behind the truck and in front of Trooper Cure's police cruiser. [Id. at 14-15].

Following a brief conversation concerning Pennington's proof of insurance, Trooper Cure asked Pennington where he had been and where he was going. [Id. at 15]. Pennington responded that he had been to see his physician in Florida. [Id. at 15-16]. Trooper Cure asked if he had been anywhere besides Florida, and Pennington stated that he had not. [Id. at 15]. Trooper Cure then frisked Pennington, and proceeded to the passengers' side of the truck to make contact with the vehicle's other occupants. [Id. at 15-16].

2

Trooper Cure asked the truck's occupants where they had been, to which Defendant Dean Wayne Wright responded that they had been riding around. [Id. at 17]. Trooper Cure asked whether the occupants had been to the Dollywood theme park in Tennessee, and they all stated that they had. [Id. at 19]. Trooper Cure then informed the occupants that the theme park was closed in January. [Id.]. Trooper Cure next asked if there was anything illegal inside the vehicle, and Defendant Angeline Boyd, who was sitting in the middle of the front seat, responded that they had been to see a doctor and had prescription medication. [Id.]. When Trooper Cure asked her where the medication was located, Boyd reached under the front seat of the vehicle and pulled out a pharmacy bag containing medication. [Id. at 19-20]. Trooper Cure took the pharmacy bag and walked to the back of the truck, where Officer Hunter, Detective Riley, and other law enforcement officers had arrived. [Id. at 20, 22]. He provided the bag to the officers, who then began conducting interviews of Pennington and the truck's occupants. [Id. at 22].

From the time Trooper Cure activated his blue lights to the time Defendant Boyd handed him the pharmacy bag, was approximately three (3) to five (5) minutes. [Id. at 41-42].

### III. PROCEDURAL HISTORY

On May 27, 2010, a federal grand jury in London, Kentucky, returned an indictment charging Pennington with conspiracy to distribute pills containing oxycodone in violation of 21 U.S.C. § 846, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and distributing a controlled substance in violation of 18 U.S.C. § 841(a)(1). [See R. 1]. The same indictment charges Boyd and Spears with violations of 21 U.S.C. § 846 and 841(a)(1). [Id.].

Boyd filed the instant motion to suppress on June 29, 2010, and Spears and Pennington

3

joined in the motion. [R. 62; 103]. As grounds for suppression, Defendants argue that the scope and duration of the traffic stop were not reasonably related to its initial purpose, and thus any evidence obtained therefrom must be suppressed as "fruit of the poisonous tree." [Id.; R. 80]. By response, the United States contends that the traffic stop did not offend the Fourth Amendment. [R. 83 at 6-10].

The Court held an evidentiary hearing concerning the motion to suppress on July 6, 2010. [see R. 74]. During the hearing, Trooper Cure and Officer Hunter provided testimony. The parties having briefed the relevant issues, the matter is now ripe for review.

IV. ANALYSIS

A.   Standing

A passenger of a vehicle that has been pulled over by the police has standing to challenge the constitutionality of the traffic stop. See Brendlin v. California, 551 U.S. 249, 255 (2007). Thus, Boyd and Spears, both passengers of the vehicle that was pulled over by Trooper Cure, have standing to bring the instant motion.

B.   The Initial Stop of the Truck

Defendants do not, and could not, argue that the initial stop of the truck was invalid. It is well settled that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Wren v. United States, 517 U.S. 806, 810 (1996). Here, Trooper Cure observed the truck speeding twelve (12) miles over the speed limit, thus supplying probable cause for the stop. [see R. 74 at 13]. That Trooper Cure's motivation for stopping the truck was to further the investigation of Pennington's alleged drug activities is irrelevant for Fourth Amendment purposes. See Wren, 517 U.S., at 813 ("Subjective intentions play

4

no role in ordinary, probable-cause Fourth Amendment analysis."); U.S. v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995) ("[P]olice officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop.") (internal citation omitted).

### C. The Scope and Duration of the Traffic Stop

A traffic stop must not only be justified at its inception, but "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). The Sixth Circuit has held that "once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants *unless* something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." U.S. v. Torres-Ramos, 536 F.3d 542, 550 (2008) (emphasis added) (internal citation and quotation omitted). Thus, "the core question concerning when a traffic stop turns into a Fourth Amendment issue has been framed as: 'at what point in time did the purpose of the traffic stop end and the detention of the driver and the [vehicle's] occupants...begin?'" U.S. v. Bonilla, 357 Fed.Appx. 693, 696 (6th Cir. 2009) (quoting Torres-Ramos, 536 F.3d, at 550).

Here, it is somewhat difficult to determine the precise point at which the purpose of the traffic stop ended. However, certain of Trooper Cure's actions were clearly reasonably related to the purpose of the stop. For instance, Trooper Cure's initial request to see Pennington's drivers' licence, registration receipt, and proof of insurance was obviously within the bounds of a permissible traffic stop. Further, Trooper Cure did not exceed the proper scope of the stop by directing Pennington to exit the truck. See Arizona v. Johnson, 129 S.Ct. 781, 786 (2009) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to

5

get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.") (internal citation omitted). Thus, the Court finds that these actions do not signify the end of the traffic stop's purpose.

Likewise, the Court finds that Trooper Cure's questions to Pennington concerning his travel plans did not cause the purpose of the traffic stop to end. "An officer's inquiries into matters unrelated to the justification for the traffic stop...do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Arizona, 129 S.Ct., at 788 (citing Muehler v. Mena, 544 U.S. 93, 100-101 (2005)). In determining whether roadside questioning which prolongs the duration of a stop is permissible, "the proper inquiry is whether the totality of the circumstances...indicates that the duration of *the stop as a whole* - including any prolongation due to suspicionless unrelated questioning - was reasonable." U.S. v. Everett, 601 F.3d 484, 494 (6th Cir. 2010) (internal citation omitted). The "overarching consideration" in this inquiry is the officer's "diligence...[in] ascertaining whether the suspected traffic violation occurred, and, if necessary, issuing a ticket." Id. Notably, "context-framing" questions concerning a motorist's travel history and travel plans "will rarely suggest a lack of diligence." Id.

Here, the totality of the circumstances indicates that the duration of the stop as a whole was reasonable. Trooper Cure's questions concerning Pennington's travel plans did not extend the duration of the stop to any significant degree, and were the type of context-framing questions which rarely indicate a lack of diligence. Thus, the questioning did not exceed the proper scope of a traffic stop.

The Court will assume, without deciding, that the purpose of the traffic stop ended upon

Trooper Cure's frisk of Pennington. At that point in time, Trooper Cure had "reasonable, articulable suspicion" that criminal activity was afoot. Illinois v. Wardlow, 528 U.S. 19, 123 (2000). "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person...of criminal activity." U.S. v. Bell, 555 F.3d 535, 540 (2009) (internal citation omitted). Reasonable suspicion may be based upon an officer's own observations, or "upon the collective knowledge of other officers." U.S. v. Braggs, 23 F.3d 1047 (6th Cir. 1994).

When Trooper Cure frisked Pennington, the collective knowledge of the law enforcement officers consisted of the following facts: (1) law enforcement had received information that Pennington was running a drug operation in which members of his organization would travel to south Florida to receive prescription medication, and bring them back into eastern Kentucky for distribution; (2) law enforcement had made a series of controlled drug purchases from Pennington; (3) a cooperating witness had recently advised law enforcement that Pennington would be making a trip to Florida around January 22, 2010, to obtain prescription medication for distribution; (4) the cooperating witness stated that Pennington would be traveling in either his red GMC pickup truck or a rental car; (5) law enforcement had made controlled drug purchases from Pennington while he was inside the red GMC truck; (6) the cooperating witness stated that Defendant Wright would be inside the vehicle, who was currently under federal indictment for another narcotics conspiracy; and (7) a probation officer had visited Wright's residence on January 21, 2010, and Wright's mother informed the officer that Wright had gone to see a physician. [R. 74 at 63-66]. This information was buttressed by Trooper Cure's personal observation of the GMC truck traveling into Kentucky from Virgina on the morning of January 22, 2010, and Pennington's admission that he had been to

7

Florida to see a physician. The Court finds that the aforementioned facts supplied Trooper Cure with reasonable, articulable suspicion of criminal activity, and justified his continued detention of Defendants. Accordingly, Defendants' motion to suppress should be denied.

V. CONCLUSION

Having considered the matter fully, and for the foregoing reasons, the undersigned recommends that the Defendants' Motion to Suppress [R. 62] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(a).

Signed August 25, 2010.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge

8