UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 10-11(1),(5),(7)-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION &** |
| PROCTOR W. PENNINGTON, SR., ) | **ORDER** |
| ANGELINA BOYD, and ) | |
| SHEENA SPEARS, ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Law enforcement stopped the defendants' red pickup truck—the same truck previously identified in a series of controlled buys—after a cooperating witness revealed that the defendants would be traveling back from Florida with illegal prescription drugs. Because reasonable suspicion justified the stop, Angelina Boyd's motion to suppress the fruits of the encounter is denied.

### BACKGROUND

At 5:00 a.m. on January 22, 2010, law enforcement lay in waiting for Proctor Wayne Pennington's red GMC pickup truck, en route to Kentucky on Highway 23. R. 74 at 66-67. They suspected Pennington of trafficking in Oxycodone, having previously targeted him in a series of controlled buys. *Id.* at 63-65. And, the day before, they received information from a cooperating witness that Pennington and others would be returning from Florida with a load of prescription medication. *Id.* at 64. The cooperator added that Pennington would likely be driving a red truck—the same truck, incidentally, from which he had unwittingly sold drugs to

investigators. *Id.* Armed with this information and his license plate number, investigators planned to catch Pennington in the act. *Id.* at 66-67.

Law enforcement spotted the truck at 5:45 a.m. They followed in unmarked cars. *Id.* at 69. After confirming that the pickup was Pennington's, including checking its plates, *id.* at 70-71, the surveillance unit fell back to allow Trooper Bradley Cure to execute the planned traffic stop. *Id.* at 71. Trooper Cure clocked Pennington doing 67 in a 55 and pulled him over. *Id.* at 13. Concerned about standing near the flow of traffic, Trooper Cure instructed Pennington to exit the vehicle and meet him near the guardrail. *Id.* at 14-15. The officer asked about Pennington's travel, and the suspect reported that he had been to a doctor in Florida. *Id.* at 15. Trooper Cure then gave Pennington a *Terry* pat for weapons. Finding none, he approached the passenger's side of the truck. *Id.* at 15-16, 17.

He asked the passengers where they had been. All appeared "extremely nervous," and one responded that they were just "riding around." *Id.* at 18, 17. Trooper Cure then asked if they had been to Dollywood, to which they responded affirmatively. *Id.* at 19. He replied that Dollywood was, in fact, closed and asked if there was anything illegal in the car. Angelina Boyd volunteered that they had actually been to a doctor and had "prescription medication" in the car. When prompted, she reached under the front seat and produced the medication. *Id.* at 19-20. Law enforcement then interviewed Ms. Boyd, who disclosed the number of trips she had taken to Florida and who paid for them. *Id.* at 88. Ms. Boyd now argues that this disclosure, and everything else that stemmed from the stop, should be suppressed.

2

DISCUSSION

The defendant over-complicates this case. She argues that this was a routine traffic stop that exceeded the proper scope and duration of a routine traffic stop once it became a search for illegal medication. R. 126, Attach. 1 at 7-8. It was no such thing. From the beginning, it was a lawful investigatory stop supported by reasonable suspicion that Pennington and his passengers were transporting illegal prescription drugs. *See United States v. Perez*, 440 F.3d 363, 369-70 (6th Cir. 2006) (holding that stop was investigatory, even though it began with a traffic infraction, because law enforcement had reasonable suspicion of a non-traffic offense when making the stop).

With or without a traffic infraction, the police can stop a car when reasonable suspicion exists that the occupants have committed or are committing a felony.[1] The Supreme Court has said so. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) ("[W]e hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion."); *United States v. Hensley*, 469 U.S. 221, 226 (1985) (reasonable suspicion of past crimes can justify stopping a car). And so has the Sixth Circuit. *See United States v. Marxen*, 410 F.3d 326, 327, 331-32 (6th Cir. 2005).

---

[1] The Sixth Circuit is split over whether reasonable suspicion, rather than probable cause, of a *traffic infraction* permits a stop. *See United States v. Simpson*, 520 F.3d 531, 538-41 (6th Cir. 2008). It has said clearly, however, that reasonable suspicion of a *non-traffic* felony does justify a stop. *Gaddis v. Redford*, 364 F.3d 763, 771 n.6 (6th Cir. 2004).

Here, the investigators had reasonable suspicion, based on "specific and articulable facts," *Hensley*, 469 U.S. at 226, to believe Pennington and his passengers were committing a crime before the stop. First, investigators knew Pennington had sold illegal drugs to them from his red pickup. Second, they had a report from a cooperating witness—who was traveling with Pennington at the time, R. 74 at 79—that Pennington would be returning from Florida with illegal drugs. Third, the cooperator's story was corroborated in two ways. Police spoke with the mother of one of the suspected passengers the day before the traffic stop, who said that her son had "gone to the doctor." *Id.* at 66. And, more importantly, events transpired as the cooperator predicted: Police intercepted Pennington's familiar red truck, bearing his license plate, en route to Kentucky. *See United States v. Witherow*, No. 95-6204, 1996 WL 487457, at *3 (6th Cir. Aug. 26, 1996) ("correct prediction of future events" is the "strongest type of corroboration").

This was more than enough. Compare these facts to those in *United States v. Marxen*, 410 F.3d at 327. There, a witness to an armed robbery reported that the robbers, a thin black man and white woman, drove away in a silver or gray Nissan Altima, license plate number 002 FCJ. *Id*. at 327. Police discovered that Uriah Marxen, a white male, drove an Altima registered to that number. *Id.* Though they followed Marxen and observed nothing suspicious, and though he committed no traffic violation, the police stopped him in the vehicle and immediately placed him in handcuffs. *Id.* The Sixth Circuit held that law enforcement had reasonable suspicion that the car was involved in a robbery. *Id.* at 331-32. Trooper Cure had these facts and more. This

stop and subsequent detention, supported by reasonable suspicion that the red truck was trafficking drugs, therefore complied with the Fourth Amendment.[2]

Yet even if the defendant could cram this case into the routine-traffic-stop bailiwick, she still loses. There is no dispute that Trooper Cure lawfully stopped the truck for speeding. The Fourth Amendment permits police to stop cars for traffic infractions, even if doing so is pretextual. *See United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008). And law enforcement can continue the detention after the original purpose of the traffic stop is completed if they have reasonable suspicion of other criminal conduct. *Id.*

No matter when the purpose of this stop shifted away from addressing Pennington's traffic infraction, Trooper Cure had the necessary reasonable suspicion to justify continuing the detention and investigating the alleged drug crime. As described above, he and the other officers were collectively[3] aware of a whole series of articulable facts indicating that this red truck, at this place, at this time, was carrying illegal prescription drugs—before the stop even took place. And the list only got longer. Every step Trooper Cure took further corroborated the cooperating witness's predictions. Upon approaching the truck, Trooper Cure noticed multiple occupants, R. 74 at 14, as the cooperator predicted, *id.* at 64. Pennington then gave Trooper Cure his

---

[2] Notably, the defendant makes no argument that her detention exceeded the proper scope or duration of an *investigatory* stop.

[3] "Reasonable suspicion can be based upon police officers' own observations or upon the collective knowledge of other officers." *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994). This is particularly true where, as here, the officer who executed the stop was part of a group of officers who decided to stop the defendant, R. 74 at 32. *See United States v. Blaire*, 524 F.3d 740, 751-52 (6th Cir. 2008).

5

insurance and registration, likely confirming that he was, in fact, Proctor Wayne Pennington. *Id.* at 15. And then Pennington informed Trooper Cure that he had been to Florida, as the cooperator said, to see his "doctor." *Id.* All of these facts developed while the stop was still focused on the traffic infraction. By the time of the last of these revelations, Trooper Cure had merely directed Pennington to exit the vehicle and asked contextual questions about his travel—both consistent with a routine traffic stop. *See Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (police may order driver out of vehicle as part of routine traffic stop (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110-112 (1977)); *United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (questions about travel merely help place traffic infraction in context and likely do not change purpose of stop). At whatever subsequent point the purpose of the stop switched to investigating a drug crime, then, the police had the necessary reasonable suspicion to continue the detention.

Boyd's responses are unconvincing. She argues first that the entire stop was pretextual. R. 126, Attach. 1 at 11-15. But law enforcement's subjective motives do not matter. *Torres-Ramos*, 536 F.3d at 550. She also argues that, by the time the stop switched to an investigatory detention, "[t]he only additional fact discovered regarding potential drug activity (prior to questioning the passengers) was Pennington's statement that he had been to see his doctor." R. 126, Attach. 1 at 18. The argument seems to be that, if the police wanted to continue this routine traffic stop for further criminal investigation, they could only rely on articulable facts developed *during* the stop to provide the necessary reasonable suspicion. Yet Boyd points to no authority for that proposition. And, according to the Sixth Circuit, detaining officers can rely on facts that

6

developed outside the immediate traffic stop to supply reasonable suspicion. *See United States v. Bailey*, 302 F.3d 652, 659 (6th Cir. 2002) (holding that an officer had reasonable suspicion sufficient to continue a stop in part because the stop occurred in a "known area of criminal activity"). Hence, all of the articulable facts available to Trooper Cure in the run-up to this stop justified continuing Pennington's detention. No matter how you slice it, then, Angelina Boyd's suppression motion fails.

## CONCLUSION

For the foregoing reasons, the defendant's objection, R. 126, is **OVERRULED**, and Magistrate Judge Edward Atkins's recommendation, R. 110, is **ADOPTED**. Additionally, Proctor Wayne Pennington, Sr., and Sheena Spears joined the suppression motion, R.67, R. 101, but did not timely object to Magistrate Judge Atkins's recommendation. Accordingly, they waived any objection, *see* Fed. R. Crim. P. 59(b)(2), and the recommendation, R. 110, is **ADOPTED** as to both of those defendants as well.

The United States filed a response, R. 132, which it incorrectly entered into CM-ECF as an objection. To the extent it is an objection, it is likewise **OVERRULED** and the Magistrate Judge's Recommendation is **ADOPTED** as discussed above.

This the 17th day of September, 2010.



Signed By:
*Amul R. Thapar*
**United States District Judge**